[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The defendant, doing business as Allen O'Brien Insurance Agency, had his office in Farmington, Connecticut. On or about March 6, 1990, he, after a number of interviews, hired the plaintiff, as a bookkeeper for his insurance agency. During the interviews she represented that she had extensive experience in bookkeeping, specifically in bookkeeping for insurance agencies. She assured the defendant that she had experience in handling business relationships with insurance financing firms. Defendant advised plaintiff that his agency financed substantial sums of insurance per month and that appropriate experience was essential in this position. Plaintiff requested an initial salary of $25,000.00 per year. Defendant advised plaintiff that there would be a trial period during which her salary would be $23,000.00 per year. She was hired and within a short time was called to jury service.
On April 24, 1990, she commenced jury duty. During the period beginning April 24, 1990 and ending June 5, 1990, she was in attendance at the Hartford Superior Court, as part of the then sitting jury panel, on the following 15 days: April 24, 25, 26, 27 and 30. May 2, 3, 8, 9, 10, 16, 17, 30 and 31 and June 5, 1990.
Plaintiff testified at trial she began sitting on "the Christie case" approximately two and a half weeks prior to CT Page 4721 the set termination date of her jury duty. Two and half weeks prior to the termination of jury duty would be approximately May 15, 1991. May 15 is three weeks subsequent to the start of jury duty. Defendant paid the plaintiff her full salary during each of the six weeks of her jury duty.
Defendant, in his experience, paid full salary to previous employees who had been called to jury duty during their jury term.
During plaintiff's employment, a number of problems began to emerge. Plaintiff was openly expressing dissatisfaction with defendant and the manner in which he ran his agency. On a number of occasions she used extremely uncomplimentary slang expressions to describe him to others. During the jury duty of plaintiff, her absence from the office required defendant to undertake more extensive supervision of the books. As he did, he became honestly convinced that not only were her claims of insurance agency experience exaggerated, but her claims of competence as a bookkeeper were also exaggerated. He determined that the books were not being kept correctly. He also became convinced that as a result of her lack of experience and knowledge concerning insurance premium financing, certain company checks were being returned to the agency because of insufficient funds.
Defendant's Office Manager, at the period in question, determined that the plaintiff's work was inadequate and incorrect in that she was inappropriately and incorrectly filing original insurance policies in the office files and not forwarding them to the clients. Both defendant and his then office manager determined that plaintiff incorrectly handled checks and incorrectly and inadequately updated information on the computer system.
During the year of 1990, defendant's agency experienced a significant decline in business. A significant percentage of the agency's business came from the activities of building and contracting companies. The decline in the business resulted in a decrease in business dollars coming into the agency. Defendant instituted cost saving methods to alleviate business problems. Given the problems he was having with plaintiff's work, he determined that he would take over the responsibility of maintaining the bookkeeping function, and would terminate plaintiff. He had been told by plaintiff that her last day of jury duty would be May 31, 1990. To date defendant has not replaced the plaintiff and has continued to perform the bookkeeping functions himself. Additionally, the economic climate and financial conditions of the agency have continued to CT Page 4722 deteriorate. Defendant has been obliged to take other economy measures including laying off his Office Manager.
Upon her termination, plaintiff filed a complaint, against the defendant, with the States Attorney's Office of Hartford County. To date, no formal charges have been brought against him.
The court is not persuaded by any testimony that the defendant threatened to terminate her employment if she served or continued to serve on jury duty.
The plaintiff's complaint sounds in two counts: Count one alleges violation of Connecticut General Statute sec. 51-247
(b) and (c). Section 51-247a reads in full, as follows:
 Sec. 51-247a. Employer not to discharge employee for jury service. Penalty. Action for recovery of wages and reinstatement. Liability of employer for failure to compensate juror-employee. (a) An employer shall not deprive an employee of his employment, or threaten or otherwise coerce him with respect thereto, because the employee receives a summons in accordance with the provisions of section 51-232, responds thereto, or serves as a juror. Any employer who violates this section shall be guilty of criminal contempt, and, upon conviction thereof, may be fined not more than five hundred dollars or imprisoned not more than thirty days or both.
 (b) If any employer discharges an employee in violation of this section, the employee, within ninety days of such discharge, may bring a civil action for recovery of wages lost as a result of the violation and for an order requiring reinstatement of the employee. Damages recoverable shall not exceed lost wages for ten weeks. If he prevails, the employee shall be allowed a reasonable attorney's fee fixed by the court.
 (c) Any employer who fails to compensate a juror-employee under subsection (b) of section 51-247 and who has not been excused from such duty under section 51-247c
shall be liable to the juror-employee for CT Page 4723 damages. The juror may commence a civil action in any superior court having jurisdiction over the parties. Extreme financial hardship on the employer shall not be a defense to this action. The court may award treble damages and reasonable attorney's fees to the juror upon a finding of wilful conduct by the employer.
 (d) Each state's attorney, assistant state's attorney and deputy assistant state's attorney shall collect in the name of the state and by suit when necessary, any fines imposed under this chapter.
The second count alleges a common law tort action for wrongful discharge.
Connecticut General Statutes section 51-247a(a) provides in pertinent part "an employer shall not deprive an employee of his employment, or threaten or otherwise coerce him with respect thereto, because the employee receives a summons in accordance with the provisions of Section 51-232, responds thereto, or serves as a juror. . . ." (Emphasis Added). Connecticut General Statutes section 51-247a does not preclude an employer from discharging an employee, for other legitimate reasons, during the employee's service of jury duty. Said section specifically speaks to the employer's discharge because the employee either receives a summons or responds thereto or serves as a juror.
This court finds the defendant terminated the employment of the plaintiff because he found her work was unsatisfactory, because, he honestly believed, she had exaggerated her prior experience and expertise and that as a result of decreasing business, he was able and continues to perform those functions and duties the plaintiff was originally hired to perform.
If the legislature had intended an absolute guarantee of continued employment during jury service, it could have and would have clearly so provided. The statute is clear and unambiguous.
General Statutes section 51-247a, obviously, is for the protection of an employee from coercion by an employer in those circumstances where the employee was required to perform his or her civic duty and serve as a juror. It would not be reasonable, or rational to suggest that the legislature intended an absolute guarantee of employment during service as a juror. CT Page 4724
This court must examine the facts and determine whether the defendant's action in terminating the plaintiff was a result of her jury service or some other legitimate reasons. Plaintiff's work product in the honest judgment of defendant was poor, her experience not as represented and his business was on the decline. Defendant paid the plaintiff her full salary for her six weeks of jury service. If it were reasonable to be believed her absence from work, as a result of her jury service, was defendant's reason for terminating plaintiff, it would not be reasonably expected the defendant would pay plaintiff for her entire jury term and then discharge her at that moment when she was to come available to him on a full time basis. Defendant's motivations in discharging plaintiff, in this court's view, had not one thing to do with her jury service.
Count two of the plaintiff's complaint alleges liability of the defendant planning from his commission as a result of a wrongful discharge. The primary issue before this court is whether the plaintiff's cause of action for wrongful discharge fits within the narrow public policy exception to the general proposition that contracts for an indefinite term of employment are terminable at will. "In Sheets v. Teddy's Frosted Foods, Inc., 179 Conn. 471, 474 et. seq. we recognized, as have the vast majority of other courts, a common law cause of action in tort for discharges `if the former employee can prove a demonstrably improper reason for dismissal, a reason whose impropriety is derived from some important violation of public policy.'" Morris v. Hartford Courant Company, 200 Conn. 676. Under this exception, the employee has the burden of pleading and proving that her dismissal occurred for a reason violating public policy. "The employer is allowed, in ordinary circumstances, to make personal decisions without fear of incurring civil liability." Morris v. Hartford Courant Company, supra.
Our courts have narrowly construed the Sheets exception and have required that the plaintiff prove that the discharge was in violation of a public policy. Seery v. Yale New Haven Hospital, 17 Conn. App. 532 (1989). Certainly the public policy allegedly violated in the instant case is that which is embodied in Connecticut General Statutes section 51-247a. Since the plaintiff has failed to prove a violation of Connecticut General Statutes section 51-247a she likewise fails in her second count of tortious wrongful discharge.
A discussion of the propriety of awards of treble damages, in the light of the foregoing, is not necessary.
Plaintiff has failed to prove that the defendant terminated CT Page 4725 her employment because she received a summons, or responded thereto or served as a juror.
Judgment may enter for the defendant.
LEONARD W. DORSEY SENIOR JUDGE